**UNITED STATES, Appellee**

v.

**David L. SMITH, Specialist Four, U.S. Army, Appellant.**

No. 56,169.

CM 446398.

U.S. Court of Military Appeals.

May 31, 1988.

For Appellant: *Captain Stephanie C. Spahn* (argued); *Luther C. West, Esquire* (on brief); *Major Marion E. Winter.*

For Appellee: *Captain Donald W. Hitzeman* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Lieutenant Colonel Larry D. Williams, Captain Tarek Sawi* (on brief); *Captain Carlton L. Jackson.*

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, appellant was found guilty by a general court-martial composed of officer and enlisted members of rape and forcible sodomy, in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925, respectively. He was sentenced to a bad-

conduct discharge, confinement for 5 years, and reduction to the lowest enlisted grade. The convening authority approved the sentence. The Court of Military Review affirmed the findings and sentence in a lengthy unpublished opinion.

This Court granted review of the following issues:

I

WHETHER TRIAL COUNSEL WAS DISQUALIFIED TO PROSECUTE APPELLANT.

II

WHETHER THE MILITARY JUDGE ERRED BY ADMITTING INTO EVIDENCE PROSECUTION EXHIBIT 1, TESTIMONY OF A GOVERNMENT WITNESS IN THE TRIAL OF APPELLANT'S COACCUSED, OVER DEFENSE OBJECTION.

We resolve these issues against appellant and affirm.

I

During an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session, appellant's civilian defense counsel moved to disqualify trial counsel, Captain Nancy Higgins, on the grounds of both an actual conflict of interest, as proscribed by Article 27(a), UCMJ, 10 U.S.C. § 827(a), and an "appearance ... of a conflict of interest," as proscribed in the ABA Standards for Criminal Justice: The Prosecution Function, Standard 3–1.2 (2d ed. 1982). This motion was based upon the fact that Captain Peter Donawick, the detailed military defense counsel, had discussed certain aspects of appellant's case with Captain Higgins when she was a member of the trial defense service. Article 27(a) states that "[n]o person ... who has acted for the defense [may] act later in the same case for the prosecution." Standard 3–1.2 states that "[a] prosecutor should avoid [even] the appearance ... of a conflict of interest with ... official duties."

During litigation on the motion, Captain Donawick testified that he had consulted Captain Higgins to discuss the possibility of having appellant submit to a polygraph examination. He was concerned, as a tactical matter, about "the propriety of having a client who is confronted with very serious charges take a polygraph examination under such circumstances where there was no explicit guarantee that charges would be dismissed even if he passed." He was also concerned with whether, in a rape case, "it would be possible to tailor" objective questions to verify that appellant was telling the truth. He sought Captain Higgins' opinion because he "regarded her as a very capable attorney," and he wanted "an impartial viewpoint on it." Captain Donawick believed the conversation lasted "from 15 to 30 minutes at the outside."

Both Captain Higgins and Captain Donawick testified that they could not remember the specifics of their conversation. Captain Donawick did not remember if he told Captain Higgins any confidential information. However, everything appellant had told him about the incident was consistent with what appellant had told the Government earlier in his statement to the police. Captain Donawick didn't know if he had provided any information beyond what appellant had told the Government, but he didn't remember learning of "any glaring discrepancies" or any "exceptional facts" from his conversations with his client. "[T]he substance of" the discussion "would probably have been limited to what my client's position would be at the trial; to whatever advantage ... [Captain Higgins] might make of that." Captain Higgins was of the opinion that no privileged information was discussed at all. Captain Donawick admitted to the military judge that the Government did not discover the existence of any additional information or witnesses as a result of the talk and that all information and witnesses to be presented at trial were properly obtained.

The military judge found no actual conflict of interest or appearance of impropriety, so he denied the motion to disqualify Captain Higgins. The Court of Military Review held that the military judge's rul-

ing was supported by the evidence of record, that any appearance of a possible conflict of interest was dispelled by litigation of the issue and appellate review, and that appellant suffered no prejudice as a result of the subject conversation. We agree with Judge Lymburner's analysis for the Court of Military Review.

▮▮▮ In determining whether there was an actual conflict of interest, the issue is whether Captain Higgins had "acted for the defense" prior to prosecuting this case. See Art. 27(a). In *United States v. Catt*, 1 M.J. 41, 46 (C.M.A.1975), this Court examined the opposite provision of Article 27(a) pertaining to a prosecutor who later acts in the same case for the defense, and held "that a distinction is drawn between someone who has acted in the same case 'for the prosecution' and someone who has participated in the same case, albeit technically for the Government, in a neutral, impartial or advisory capacity." Analogously, one who has participated in the defense case "in a neutral, impartial or advisory capacity" has not "acted for the defense" in such a manner as to be disqualified. Here, there was no showing that: (1) an attorney-client relationship had ever been established between Captain Higgins and appellant; (2) the prosecution had gained any unfair advantage; (3) any information or witnesses not otherwise discoverable were obtained; or (4) any evidence was obtained as a result of the conversation between the attorneys. The Court of Military Review properly determined that there was no actual conflict of interest.

▮▮▮ We next consider the issue of the appearance of a conflict of interest. ABA Standard 3-1.2 admonishes prosecutors to avoid the appearance as well as the reality of a conflict of interest. Although the situation presented in this record may, at first glance, raise the appearance of a possible conflict of interest; we agree with the Court of Military Review that any such appearance in this case has been dispelled by thorough litigation of the issue at trial and on appellate review. See *United States v. Levite*, 25 M.J. 334, 340-41 (C.M.

A.1987) (Cox, J., concurring); *United States v. Garwood*, 20 M.J. 148 (C.M.A.), cert. denied, 474 U.S. 1005, 106 S.Ct. 524, 88 L.Ed.2d 456 (1985); see also *United States v. Payton*, 23 M.J. 379 (C.M.A.1987) (where there was a possible appearance of impropriety but facts were insufficiently developed in the record, a limited hearing was appropriate to determine whether accused suffered prejudice). We further agree with the military judge and the Court of Military Review that appellant has failed to demonstrate that he suffered any prejudice as a result of counsel's conversation. See *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *United States v. Remai*, 19 M.J. 229 (C.M.A. 1985); *United States v. Brooks*, 2 M.J. 102, 105 (C.M.A.1977).

## II

▮▮▮ Appellant's second contention is that the military judge erred by admitting into evidence, over defense objection, prosecution exhibit 1, an extract of the testimony of a government witness given during the trial of appellant's coaccused. The witness, Brett T., was the victim's boyfriend at the time of the rape. He was with her at the gasthaus where they met appellant and the coaccused; he walked her to appellant's car when she accepted their offer of a ride home; and he was the first person to see her after the assaults. He testified at the joint Article 32, UCMJ, 10 U.S.C. § 832, investigation of appellant and the coaccused, and at the coaccused's general court-martial. However, upon a lengthy defense delay in commencing appellant's trial, Brett T., a military dependent, was no longer living in Germany. He was attending a summer camp in Spain before returning to school in Texas. At the time of trial, he was no longer subject to subpoena and service of process by local authorities. The Government was unable to arrange for the witness' voluntary return to Germany to testify due to the objections of his parents.

Appellant asserts that the transcript of Brett T.'s testimony from the coaccused's

trial was erroneously admitted on the grounds that: (1) it did not qualify under the "residual hearsay exception" of Mil.R. Evid. 804(b)[1] in that neither the requirement of unavailability nor the requirement for "equivalent circumstantial guarantees of trustworthiness" was met; and (2) its admission in lieu of live testimony violated his right under the confrontation clause of the Sixth Amendment to confront and cross-examine the witness.

In ruling against these same arguments, the Court of Military Review agreed with the military judge's special findings and held that:

(a) The witness would have been present to testify, but for the considerable defense delay. The Government had made a reasonable and good-faith effort to obtain the presence of the witness within the meaning of Mil.R.Evid. 804(a), and the witness was unavailable within the meaning of Mil.R. Evid. 804(b)(5).[2]

(b) The out-of-court statement had "circumstantial guarantees of trustworthiness" within the meaning of Mil.R.Evid. 804(b)(5). The statement was a verbatim transcript made under oath in a judicial setting, and the witness was subjected to cross-examination. The substance of the statement was the same as the summarized sworn statement the witness had given at the Article 32 investigation, during which this appellant's defense counsel had cross-examined him at length.[3]

(c) The statements had the "indicia of reliability" required under the Sixth Amendment. *See United States v. Hines,* 23 M.J. 125, 134–36 (C.M.A.1986). The declarant had first-hand knowledge of the material facts in his statement; they were corroborated by the testimony of other credible witnesses; and they were not inconsistent with the facts in appellant's own statements. When balanced against the deprivation of confrontation rights, the interests of public policy and the necessities of the case "warrant[ed] dispensing with confrontation at trial."[4]

Upon review of the record, we agree with the Court of Military Review's analysis. The findings entered by the military judge were within the bounds of his discretion and were supported by the record. We further agree that, in view of the other evidence in the case, any error in admitting the statement was harmless beyond a reasonable doubt.[5]

The decision of the United States Army Court of Military Review is affirmed.

Judge SULLIVAN concurs.

EVERETT, Chief Judge (concurring in the result):

### A

The majority opinion concludes "that appellant has failed to demonstrate that he suffered any prejudice as a result of counsel's conversation." 26 M.J. 152, 154. In my view, under the circumstances here, the burden rested on the Government to show that appellant suffered no prejudice—rather than on appellant to show the converse.

---

1. Mil.R.Evid. 804(b)(5), Manual for Courts-Martial, United States, 1969 (Revised edition), states that:

   The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

   \*    \*    \*    \*    \*    \*

   A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the military judge determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best

   be served by admission of the statement into evidence.

2. *See* n.1 above.

3. This testimony was not offered, and we do not admit it, pursuant to the former-testimony exception of Mil.R.Evid. 804(b)(1).

4. *See Ohio v. Roberts,* 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980).

5. *See* Art. 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a). *See also United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed. 2d 96 (1983); *United States v. Cordero,* 22 M.J. 216, 223 (C.M.A.1986).

*See United States v. Stubbs*, 23 M.J. 188 (C.M.A.), *cert. denied*, —— U.S. ——, 108 S.Ct. 142, 98 L.Ed.2d 98 (1987). However, I am convinced that the Government has carried this burden.[1]

## B

The testimony given by a witness at the trial of appellant's co-accused, Gettings, cannot qualify for admission under Mil.R. Evid. 804(b)(1). This hearsay exception applies only to former testimony given in a proceeding where the accused was a party. Thus, it was necessary for the Government to offer this testimony under Mil.R.Evid. 804(b)(5).

In my view, this exception is narrow in scope. Moreover, an accused possesses the constitutional right of confrontation independent of this rule. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Even so, I conclude that in this case the military judge did not err by ad-

mitting the exhibit. *Cf. United States v. Hines*, 23 M.J. 125 (C.M.A.1986). Of special importance to me are these circumstances: Appellant and Gettings relied on the same defense—namely, consent of the alleged victim; they both were represented by the same civilian counsel; after proper inquiry,[2] the military judge determined that no actual conflict of interest existed between Smith and his co-accused; the witness had testified during the Article 32 investigation in appellant's own case and had been subject to cross-examination at that time; and there was no significant variation between his testimony during the pretrial investigation and his testimony at the trial of the co-accused.[3] I would have had greater difficulty with this case if the exhibit in issue had been testimony of the victim, rather than of some other witness; but under the circumstances here, I find no violation either of the Military Rules of Evidence or of the United States Constitution.

1. Obviously, it would have been desirable if a trial counsel had been appointed whose participation was not subject to a question of conflict of interests. However, I do not know what options were available to the convening authority in choosing a prosecutor for appellant's case.

2. *See United States v. Devitt*, 24 M. J. 307 (C.M.A.1987); *United States v. Breese*, 11 M.J. 17, 21 (C.M.A.1981).

3. The majority opinion and the opinion in the court below refer to defense delays of trial. As

far as I am aware, the defense delays were perfectly legitimate, in which event they have little relevance in determining whether the accused's right of confrontation has been adequately safeguarded. However, delays in getting to trial could legitimately be considered by the judge in determining whether to allow the use of former testimony or delay further to await a videotaped deposition. *See United States v. Crockett*, 21 M.J. 423 (C.M.A.), *cert. denied*, —— U.S. ——, 107 S.Ct. 130, 93 L.Ed.2d 74 (1986).